(Hamilton County Court of Insolvency.)

In Re ASSIGNMENT OF THE COMMERCIAL BANK.

---

An assignee can not charge a commission on moneys coming into his hands which it is found do not belong to the trust fund; nor can a commission be charged on the same amounts by both an assignee and the trustee succeeding him.

Where neither of two co-trustees is dominant, counsel employed by either of them and recognized by the court are legally employed.

Failure by counsel to get a check cashed with which he has been paid his fee by an assignee, does not constitute non-payment by the assignee.

A fee of $1,250 for ten days of almost exclusive service rendered by an attorney to the assignee of a bank with large assets and liabilities is not excessive—Fees for other services by counsel.

---

McNEILL, J.

Heard on exceptions to account.

1. Exceptions have been filed to the account of Wm. H. Campbell, assignee, filed herein in this, that he has charged the statutory commission on money that came into his hands as assignee, belonging to Wm. Fogarty, Charlotte Pendleton and also others, which money formed no part of the assigned estate.

I think this exception is well taken The compensation of the assignee provided in section 6357, Revised Statutes, is intended for services rendered to the assigned estate. If by reason of his office as assignee property of third parties comes into his hands and he renders service in relation to that property, he shall be compensated by the parties for whom the services are rendered. Therefore the aomunt of compensation placed in the account to the credit of the assignee, will be reduced by the amount of commissions charged on money of third parties, which came into his hands. See, in this connection, section 6188, Revised Statutes.

There is one item of $5,404.73 deposit at the First National Bank, which appears in both the account of Wm. H. Campbell, as-

signee, and the account of the trustees. Only one commission could be charged on this, as also on the balance of trust funds in the hands of Mr. Campbell when he resigned as assignee and the trustees were appointed by the court. The trustees have made no claim as to the balance in Mr. Campbell's hands yet to be turned over by him, but this matter should now be agreed upon or determined by the court on submission.

2. Exceptions have also been filed to an item of $1,250, alleged in the account of Wm. H. Campbell, assignee, to have been paid to Charles W. Baker as attorney fees, for services rendered to said Campbell, assignee, and also to an item of $6,000, alleged in the account filed by Wm. H. Campbell and the Union Savings Bank & Trust Copmany, trustees, to have been paid by check of Mr. Campbell, but not acquiesced in as to amount by said Union Savings Bank & Trust Copmany.

Immediately after the assignment was made, Mr. Campbell retained as his attorneys Mr. Baker, and the firm of Swing & Morse, who continued to act for him as such, in all matters connected with the assignment, up to the time of his resignation as assignee and his appointment as trustee, with the Union Savings & Trust Company as co-trustee—a period of about ten days.

After the trustees were appointed, the Savings Bank & Trust Company objected to the further retention of Mr. Baker, on the ground that the firm of Swing & Morse could well attend to all the legal business connected with the assignment; but Mr. Campbell insisted that Mr. Baker should be retained, and he continued to act as attorney, and was recognized as such by the court and all parties connected with the assignment, until Mr. Campbell was removed from his office as trustee by the court, in August, 1895, when Mr. Baker ceased to act as attorney for the assigned estate. The trustees were appointed as co-trustees; neither was dominant; Mr. Campbell had the same authority in the managemet of the estate as his co-trustee, and the same right to employ counsel. Therefore Mr. Baker was duly retained as counsel, and was recognized as such. He rendered valuable services in the matters of the estate, and is entitled to compensation.

It is further contended that Mr. Baker has not been paid the fees with which Mr. Campbell credits himself in his accounts. The evidence shows that Mr. Campbell has given Mr. Baker checks on a fund deposited in bank subject to his check, and greater in amount than the checks given. Mr. Baker holds the checks, and has not presented them for payment at the bank. His reason for so doing is, that he is awaiting the decision of the court upon the question of the value of his services, and this not at the request of Mr. Campbell. I think the payment so made is a sufficient compliance with section 6357 of our Revised Statutes, which requires that attorneys fees shall

have been paid by an assignee before the court shall allow him for them in his account.

It is further contended that the amount of the attorney's fees charged by Mr. Baker is excessive. The assignee has filed two affidavits sworn to by Mr. Baker, one setting forth in detail the services rendered to Mr. Campbell as assignee, with total value of said services stated at $1,250, and the other setting forth in detail the services rendered to the trustees, with the total value of said services stated at $6,000. In addition to these affidavits, a large amount of testimony was introduced as to the amount and value of the services rendered; also a number of practicing attorneys were called as experts as to the value of the services. It is contended that a large part of the services for which compensation is claimed are such services as should have been rendered by the assignee in the usual course of his duty. There is no doubt that some of the services for which compensation is claimed should have been performed by the assignee, but there is so much detail in relation to these services that it is impossible, in an opinion of reasonable length, to specify the different items. I have gone over the evidence with care, and in fixing the value of the total services have eliminated such items as should, in my judgment, be classed as such as should have been performed by the assignee. It must, however, be remembered that this was not an ordinary assignment. A bank with assets afterward appraised at $———, and with liabilities amounting to over $———, was suddenly placed in the hands of an assignee.

Among the assets was a large amount of commercial paper, some matured, some maturing, paper deposited in bank for collection and paper belonging to other banks sent for collection, which needed prompt attention. Checks had gone to the clearing house, where the bank, the day of the assignment, failed to clear; also depositors and other creditors, as soon as the failure of the bank was known, came to the bank in large numbers, and questions as to the rights of the parties were constantly arising, so that it was the part of wisdom on the part of the assignee to have the assistance of competent attorneys in all these matters; and the testimony shows that during the time Mr. Campbell continued as assignee, Mr. Baker and Judge Swing were almost, if not altogether, employed in matters relating to this assignment, to the exclusion of other business. Therefore in view of the responsibility assumed in directing, advising with reference to and protecting the matters and interests of the assigned estate, and the amount of labor done by the attorneys while the assignee was in charge, I do not think the sum of $1250 as compensation to Mr. Baker for the services rendered by him to the assignee is more than fair and reasonable.

After the resignation of Mr. Campbell, and the appointment of the trustees, Mr. Baker continued to represent the estate as attorney until the removal of Mr. Campbell. During this time a large number of proceedings were brought both in the common pleas and the court of insolvency, which, for quite a period of time, required the presence of counsel in court almost daily. The preparation of these cases for trial required much time and labor. The claim against the Hellenbush estate, amounting to more than $300,000, and which was much involved, required considerable investigation and time and labor, also the examination of the question as to whether the Fleischman claim for $108,000 should be allowed as a valid claim against the estate, and the examination of many other claims for and against the estate, so that there is no question but that Mr. Baker and the other counsel associated with him have spent a great deal of time and have rendered valuable services to the estate

I have heard the evidence as to the amount and value of the services rendered by Mr. Baker to the estate, and in addition to this I have knowledge of the services rendered in connection with the administration of the trust estate in this court. All the experts called excepting one placed the value of the services rendered by Mr. Baker at not less than $6,000, being the amount claimed.

I have given this matter careful consideration, and it seems to me that $6,000 is very full compensation. From the evidence submitted and from my knowledge of the value of such services, I think the sum of $5,000 for the entire services rendered by Mr. Baker to the estate from the time the assignment was made until his relation to it as attorney ceased, would be a full and fair compensation. Then deducting the sum of $1,250 allowed to him for his services rendered to the assignee, the balance, $3,750, will be the amount for the services rendered by him to the trustees.

E. W. Kittredge, for Mr. Baker; C. B. Matthews for C. E. Schell, and W. A. Hicks for excepting creditors; J. B. Swing and Guy Mallon, for the trustees.